UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LAMONT WALKER,

                Plaintiff,

v.                                           Case No. 16-cv-654-pp

KEVIN PITZEN, CHAD KELLER,
BRIAN FRANSON, AND DON MORGAN,

                Defendants.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 16), GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 22), DENYING AS MOOT PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 37), GRANTING PLAINTIFF'S MOTION FOR A DECISION AND ORDER (DKT. NO. 39), DENYING AS MOOT PLAINTIFF'S MOTION TO COMPEL (DKT. NO. 40) AND DISMISSING CASE**

---

      Plaintiff Lamont Walker is a Wisconsin state prisoner representing himself. He alleges that the defendants retaliated against him after he filed a lawsuit against defendant Chad Keller and other correctional officers. The plaintiff has filed a motion for summary judgment, dkt. no. 16, as have the defendants, dkt. no. 22. For the reasons explained below, the court will deny the plaintiff's motion, grant the defendants' motion, and dismiss this case.

I.   **RELEVANT FACTS**[1]

   A.   <u>Parties</u>

The plaintiff was an inmate in the custody of the Wisconsin Department of Corrections housed at the Columbia Correctional Institution (Columbia) at the time relevant to his claims. Dkt. No. 24 at ¶1. The defendants worked at Columbia at all times relevant—defendant Kevin Pitzen as a correctional officer, <u>id.</u> at ¶2, Chad Keller and Brian Franson as captains, <u>id.</u> at ¶4, and Don Morgan as an administrative captain, <u>id.</u> at ¶6. Morgan and Franson also served as due process hearing officers. <u>Id.</u> at ¶8.

   B.   <u>Conduct Report #2085566</u>

On October 7, 2010, Captain Keller received a letter addressed to Security Director Nickel with the name of inmate Brandon Wingo on the envelope. <u>Id.</u> at ¶10. On October 8, 2010, Captain Keller gave Officer Pitzen a copy of the letter. <u>Id.</u> ¶11. The letter stated in part:

> But you've been trying to escape me but I'm going to get out and wait for you to get off work and kidnap you and stick my dick in your pink azz pussy suck your pretty tities and grip your big azz round booty . . . . after I'm done I'm gone shoot you in the head with my gun ha! Ha! Ha! . . . I go home less than 30 days, do something if you want to I'll kill you . . . . Just give me the pussy bitch!!

<u>Id.</u> ¶12.

Captain Keller was responsible for investigating the letter. <u>Id.</u> at ¶13. When Security Director Nickel gave him the letter, she told him that she believed that it could be from the plaintiff, because she recognized the

---
[1] The court takes the facts from the Defendants' Proposed Findings of Fact, dkt. no. 24, and from the Plaintiff's Proposed Findings of Fact, dkt. no. 19.

handwriting and believed it to be similar to the plaintiff's. Id. at ¶14. The goal of Captain Keller's investigation was to determine who wrote the letter. Id. at ¶15. During the investigation, he confiscated several pieces of paper with handwriting on them from the plaintiff's cell, which was located across the hall from inmate Wingo. Id. at ¶16.

Officer Pitzen assisted Captain Keller in analyzing the handwriting from the letter and from the pieces of paper from the plaintiff's cell. Id. at ¶18. Captain Keller had received training on handwriting analysis, and he determined that the handwriting of the letter to Security Director Nickel was consistent with the handwriting of the plaintiff's papers from his cell. Id. at ¶¶18-21. Particularly, there was similar construction of the letters "s" and "c." Id. at ¶20. Captain Keller and Officer Pitzen also noted that inmate Wingo's first name was misspelled on the envelope, which led them to believe that Wingo did not actually write the letter, because they anticipated that someone would spell their first name correctly. Id. at ¶¶22-23. Based on the investigation, Captain Keller concluded that it was more likely than not that the plaintiff wrote the letter to Security Director Nickel, due to (1) the consistency of the handwriting between the letter and the plaintiff's papers, (2) the close proximity of the plaintiff's cell to Wingo's cell, and (3) the unlikelihood that Wingo would misspell his own first name. Id. at ¶24. Therefore, Captain Keller directed Officer Pitzen to write a conduct report to the plaintiff for violating institution rules. Id. at ¶25.

On October 8, 2010, Captain Keller told the plaintiff that he would be receiving a conduct report for threats, sexual conduct and disrespect based on the letter to Security Director Nickel. Dkt. No. 19 at ¶3. The plaintiff responded that he didn't do anything wrong and that he didn't write the letter. Id.

On October 8, 2010, Officer Pitzen issued the plaintiff Conduct Report #2085566 for violation of Wis. Admin. Code §§ DOC 303.15(1)(c) (sexual conduct), 303.16 (threats), and 303.25 (disrespect). Dkt. No. 24 at ¶27; Dkt. No. 19 at ¶4. Captain Keller and Officer Pitzen had no further involvement in the matter. Dkt. No. 24 at ¶28.

When Officer Pitzen issued the plaintiff the conduct report, he was not aware of any lawsuits that the plaintiff had filed against him, Captain Keller or other institution staff. Id. at ¶¶29-30. Officer Pitzen wrote the conduct report based on the finding that the plaintiff had written the letter making statements of sexual conduct and threats to kill Security Director Nickel. Id. at ¶31.

Captain Keller investigated the statements in the letter because, as captain, he was required to investigate all possible rule violations that came to his attention. Id. at ¶36. Captain Keller directed Officer Pitzen to write the conduct report because he concluded that the plaintiff had written the letter making statements of sexual conduct and threats to kill Nickel. Id. at ¶37.

Captain Higbee reviewed the conduct report and decided that it could proceed as a major offense, noting that the plaintiff previously had been found guilty of the same or similar offenses. Id. at ¶38.

C.  Disciplinary Hearing of Conduct Report #2085566

Captains Franson and Morgan were the assigned hearing officers at the November 1, 2010, disciplinary hearing on Conduct Report #2085566. Id. at ¶¶41-42 As the hearing officers, Franson and Morgan reviewed all of the testimony and evidence, and made a credibility determination as to whether the alleged rule violation "more likely than not" occurred. Id. at ¶¶43-49.

The plaintiff attended the hearing and made the following statement:

> I didn't write that letter. I wrote those other ones, but that's not my handwriting on the letter in the ticket. I've got distinctive handwriting. Keller is a defendant in my civil suit and that's why he did this. The ticket said the name was misspelled. That's impossible I couldn't misspell the name of a guy who lives across the hall from me. The advocate refused to answer some questions about following due process rules. She said that she would send it to the Security Director.

Id. ¶50.

On the hearing date, the plaintiff explained to Captains Franson and Morgan that Keller shouldn't be part of the investigation, because the conduct report was about him and because Keller was a defendant in a lawsuit the plaintiff had filed. Dkt. No. 19 at ¶5. Franson and Morgan disregarded the plaintiff's concern and went on with the hearing. Id. The plaintiff had filed a lawsuit against Captain Keller and six other defendants on June 10, 2010, about four months before Keller issued the conduct report at issue in this case. Id. at ¶10 (second ¶10)[2]; Dkt. No. 25 at ¶11; Dkt. No. 26-1 at 11, 13.

In light of the plaintiff's allegation that Captain Keller was biased, Captains Franson and Morgan still considered Keller's testimony because, prior

---
[2] In his proposed facts, the plaintiff lists paragraph 10 twice.

to the hearing, they didn't know that the plaintiff had initiated litigation against Keller. Dkt. No. 24 at ¶¶72-79. The plaintiff submitted no written evidence of a lawsuit against Keller, a lawsuit against Keller was not mentioned in his pre-hearing submissions, and it was brought up only at the hearing. Id.

The plaintiff requested Captain Keller as a witness at the hearing. Id. at ¶76. Without such a request, Keller would not have attended the hearing. Id. Captain Keller answered the plaintiff's questions and pointed out the similarities in the handwriting of the letter to samples of the plaintiff's handwriting. Id. at ¶77. The plaintiff denied writing the letter, alleged that Captain Keller was a defendant in his lawsuit, and said that he could not misspell the person's name that lived across the hall from him. Id. at ¶78. The plaintiff did not provide evidence to convince Captains Franson or Morgan that someone else may have written the letter. Id. at ¶79.

After stating that Captain Keller was biased, the plaintiff accused the advocate of not doing her job. Id. at ¶82. Captains Franson and Morgan believed that the plaintiff was attempting to deflect blame for his conduct by accusing others of misconduct, which is not uncommon in disciplinary hearings. Id. at ¶¶55, 80.

Because lawsuits against staff are common in prison, neither Franson nor Morgan can disregard evidence submitted by security staff solely based on an inmate's lawsuit against security staff. Id. at ¶¶66-68, 73-74. To do so would encourage the inmate or other inmates to attempt to file litigation against security staff in an effort to avoid discipline on violation of institution

6

rules. Id. at ¶67. Inmates often use the tactic of claiming bias in an attempt to intimidate staff, sway their decisions, or insulate themselves from evidence in a conduct report. Id. at ¶¶68, 74.

In addition to considering the plaintiff's testimony, Captains Franson and Morgan reviewed the statement of the conduct report, Captain Keller's testimony and Officer Pitzen's written statement. Id. at ¶51. They noted that the plaintiff admitted to nothing. Id. at ¶52. After reviewing all of the available evidence and testimony, however, they found the conduct report and witness statements to be accurate and credible due to the investigation of the incident and Captain Keller's training in handwriting analysis. Id. at ¶53. They also believed that Officer Pitzen and Captain Keller didn't have reason to fabricate the report and had no stake in the outcome of the hearing. Id. at ¶54.

Based on the their findings and review of the evidence, Captains Franson and Morgan found the plaintiff guilty of the charges of sexual conduct, threats, and disrespect, and gave him a disposition of 180 days disciplinary separation and disposal of the contraband. Id. at ¶57. Franson and Morgan made their decision for the disposition based on the following:

- The plaintiff's overall disciplinary record was poor;
- The plaintiff had been found guilty of similar offenses recently;
- Serious compromise of institution security;
- Disruptive event;
- The plaintiff accepted no responsibility nor showed remorse over the incident;
- Disposition must deter further violation;
- Disposition must allow the plaintiff to be kept in a status where his behavior can be more safely managed.

Id. ¶58.

7

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

### III. DISCUSSION

   *A.   Parties' Arguments*

The plaintiff contends that the "record is clear" that the defendants retaliated against him for exercising his right to file a lawsuit. Dkt. No. 17 at 2. According to the plaintiff, the defendants "cannot argue with a straight face that any reasonable prison official would not have know[n] that Mr. Walker did write that letter and they could not prove this." Id. He argues that other than the conduct report which states that some of the letters appear to be same, the defendants offer no proof to show that they know that the plaintiff wrote the letter. Id. at 3. The plaintiff also asserts that "[t]his case would make the defendants to use speculation and if this is the case then that would mean that the defendants should not have written the conduct report without evidence." Id.

The defendants respond that they are entitled to summary judgment on the plaintiff's retaliation claims. According to the defendants, the plaintiff cannot show that his lawsuit against Captain Keller was a motivating factor in the actions that the defendants took. Dkt. No. 23 at 10. The defendants also argue that the plaintiff has not provided evidence that he suffered a deprivation that would likely deter First Amendment activity. Id. at 19. They assert that the plaintiff cannot provide any evidence to refute that he would have been issued the conduct report and that he would have been found guilty at the disciplinary hearing regardless of any retaliatory motive. Id. at 21.

B.  *Applicable Law*

At the summary judgment stage, the plaintiff has the initial burden to make out a *prima facie* case of retaliation by showing that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." Hawkins v. Mitchell, 756 F.3d 983, 996 (7th Cir. 2014) (citation omitted). If the plaintiff makes this *prima facie* showing, the defendants must show that the adverse action would have occurred anyway. Mays v. Springborn, 719 F.3d 631, 634 (7th Cir. 2013); see also Greene v. Doruff, 660 F.3d 975, 979 (7th Cir. 2011) (if inmate meets all three elements, burden shifts to show that officers would have taken the same actions "even in the absence of protected conduct"). If the defendants meet this burden, then the plaintiff must show that their proffered reason was pretextual—in other words, a lie—and that the real reason was retaliatory animus. Thayer v. Chiczewski, 705 F.3d 237, 252 (7th Cir. 2012).

C.  *Analysis*

1.  Officer Pitzen

The defendants contend that the court must dismiss the plaintiff's claim against Pitzen because there is no evidence to show that the plaintiff's protected activity—the lawsuit he filed against Keller—was a motivating factor in Pitzen's decision to issue the plaintiff a conduct report. Dkt. No. 23 at 11.

The court first notes that there is no evidence in the record that the plaintiff filed any lawsuit against Officer Pitzen. It is undisputed that when

10

Pitzen issued the conduct report, he wasn't aware of any lawsuits that the plaintiff had filed against him and he had no personal knowledge of any lawsuit that the plaintiff had filed against other staff, including Captain Keller. Thus, Officer Pitzen's decision to follow Captain Keller's directive to write the conduct report could not have been retaliatory. See Tomanovich v. City of Indianapolis, 457 F.3d 656, 668-69 (7th Cir. 2006) (defendants must have had actual knowledge of the plaintiff's prior complaints for their decisions to be retaliatory); Morfin v. City of East Chicago, 349 F.3d 989, 1005 (7th Cir. 2003) ("The protected conduct cannot be proven to motivated retaliation if there is no evidence that the defendants knew of the protected activity.").

The undisputed facts show that Officer Pitzen wrote the conduct report based on the finding that the plaintiff wrote the letter making statements of sexual conduct and threats to kill Security Director Nickel. On this record, a reasonable factfinder could not conclude that Pitzen retaliated against the plaintiff. The court will grant the defendants' motion for summary judgment as to Officer Pitzen.

    2.    Defendant Keller

Likewise, the defendants urge the court to dismiss the plaintiff's claim against Keller because there is no evidence to show that the plaintiff's lawsuit was a motivating factor in Keller's decision to order Pitzen to issue the plaintiff a conduct report. Dkt. No. 23 at 13.

The plaintiff filed a lawsuit against Captain Keller on June 10, 2010. The plaintiff claims that Captain Keller directed issuance of the October 8, 2010,

11

conduct report in retaliation for the plaintiff naming Keller in the lawsuit. The plaintiff contends that Captain Keller was not notified of the lawsuit against him until September 24, 2010, which shows a much closer link to the alleged retaliatory conduct report. Dkt. No. 31 at 1. The plaintiff, however, has cited no *evidence* to support his allegation that Keller didn't find out about the lawsuit until September 24, 2010. Based on a review of the docket of that case, the court cannot tell when Captain Keller became aware of the lawsuit, although the docket shows that he accepted service of the complaint on August 5, 2010—two months before the issuance of the conduct report. Dtk. No. 26-1 at 14.

The undisputed facts of this case show that after receiving the letter on October 7, 2010, Captain Keller conducted an investigation to determine who wrote the letter. He had received training on handwriting analysis and he analyzed the letter's handwriting by comparing it to other documents on which the plaintiff had written. Based on his investigation, on October 8, 2010, Captain Keller concluded that it was more likely than not that the plaintiff wrote the letter based on several factors, including the handwriting analysis. He then directed Officer Pitzen to issue the conduct report.

The plaintiff has offered no evidence to support a finding that Captain Keller issued the conduct report to retaliate against him for suing him. Retaliation requires a showing that the plaintiff's conduct was a motivating factor in the defendant's conduct. See Watkins v. Kasper, 599 F.3d 791, 794 (7th Cir. 2010); Bridges v. Gilbert, 557 F.3d 541, 552 (7th Cir. 2009). The

evidence here indicates only that Captain Keller investigated the letter and directed Officer Pitzen to issue the conduct report after he concluded that the plaintiff wrote the letter. Even though the plaintiff alleges retaliation based on Captain Keller's direction to issue the conduct report two to four months after the plaintiff filed a lawsuit against him, the plaintiff's speculation regarding Captain Keller's motive does not overcome the contrary evidence that Keller acted for non-retaliatory reasons. See Devbrow v. Gallegos, 735 F.3d 584, 587-88 (7th Cir. 2013) (citing Springer v. Durflinger, 518 F.3d 479, 484 (7th Cir. 2008) (speculation concerning retaliatory motives cannot create a genuine issue of material fact); Borcky v. Maytag Corp., 248 F.3d 691, 695 (7th Cir. 2001)).

Even if the plaintiff had established that his June 2010 lawsuit against Captain Keller was a motivating factor in Keller's decision to direct Pitzen to issue the conduct report, it is undisputed that Keller directed Pitzen to write the conduct report because he genuinely believed, following his investigation, that the plaintiff wrote the letter to Security Director Nickel. See Van den Bosch v. Raemisch, 658 F.3d 778, 788 (7th Cir. 2011). The validity of the conduct report depends on the sincerity of the Captain Keller's belief that the plaintiff wrote the letter. See Thayer v. Chiczewski, 705 F.3d 237, 251-52 (7th Cir. 2012). The plaintiff has offered no evidence that rebuts the sincerity of Captain Keller's investigation or his belief that the plaintiff wrote the letter. Because Captain Keller acted for legitimate reasons, the court will grant the defendants' motion for summary judgment as to Keller.

### 3. Defendants Franson and Morgan

The defendants ask the court to dismiss the plaintiff's claim against Franson and Morgan because there is no evidence to show that the plaintiff's lawsuit against Captain Keller was a motivating factor in either Franson's or Morgan's decision to find the plaintiff guilty at the disciplinary hearing. Dkt. No. 23 at 16.

The plaintiff claims that Franson and Morgan found him guilty on Conduct Report #2085566 in retaliation for the plaintiff's lawsuit against Captain Keller. It is undisputed, however, that neither Franson nor Morgan had any actual knowledge that Walker had filed a lawsuit against Keller prior to the hearing. Moreover, neither had any reason to believe that the conduct report was retaliatory. Knowledge of the plaintiff's allegation of retaliation is not the same thing as knowing that the correctional officer was lying about his reasons for the conduct report. Wilson v. Greetan, 571 F. Supp. 2d 948, 955 (W.D. Wis. 2007). The plaintiff must show that the hearing officer did not honestly believe that the conduct report was valid, but he decided to find plaintiff guilty of it anyway. Id. (citing Luck v. Rovenstine, 168 F.3d 323, 327 (7th Cir. 1999)).

The plaintiff says that the destruction of his letter shows that Franson and Morgan intentionally failed to preserve the evidence in bad faith, and argues that he has put forth enough evidence to show that the defendants retaliated against him and then attempted to cover up by destroying the conduct report. However, the plaintiff has not cited evidence to support his

14

contention that Franson and Morgan destroyed his letter. Rather, Franson and Morgan ordered destruction of the contraband as part of the disposition of the conduct report, which is consistent with the Wisconsin Administrative Code. See Wis. Admin. Code §DOC 303.09. The plaintiff has not submitted any evidence establishing when the letter was destroyed, or who destroyed it.

The undisputed facts establish that Captains Franson and Morgan weighed the evidence and facts submitted at the hearing and determined that, more likely than not, the plaintiff wrote the letter to Security Director Nickel. The plaintiff has not offered any evidence to show that Franson or Morgan were motivated by retaliation when they found him guilty at the disciplinary hearing. The plaintiff's subjective belief that they retaliated against him is not enough to support a *prima facie* claim. See Johnson v. Kingston, 292 F. Supp. 2d 1146, 1158 (W.D. Wis. 2003). The court will grant the defendants' motion for summary judgment as to the plaintiff's retaliation claims against Franson and Morgan.

**IV.  CONCLUSION**

In issuing this decision, the court **GRANTS** the plaintiff's motion requesting a decision to be rendered on plaintiff's and defendants' motions for summary judgment. Dkt. No. 39.

The court **DENIES** the plaintiff's motion for summary judgment. Dkt. No. 16.

The court **GRANTS** the defendants' motion for summary judgment. Dkt. No. 22.

The court **DENIES AS MOOT** the plaintiff's motion to appoint counsel. Dkt. No. 37.

The court **DENIES AS MOOT** the plaintiff's motion to compel. Dkt. No. 40.

The court **ORDERS** that this case is **DISMISSED**.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing a notice of appeal *in this court* within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). A party must file any motion under Federal Rule of Civil Procedure 59(e) within **28 days** of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any party filing a motion under Federal Rule of Civil Procedure 60(b) must do so within a reasonable time—generally, no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 28th day of August, 2017.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**United States District Judge**